**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.I. o/b/o M.I.,<br><br>Plaintiff,<br><br>v.<br><br>NORTH HUNTERDON-VOORHEES REGIONAL HIGH SCHOOL DISTRICT BOARD OF EDUCATION,<br><br>Defendant. | Civil Action No. 20-870 (MAS) (LHG)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Cross-Motions for Summary Judgment filed by Plaintiff M.I. ("Plaintiff") o/b/o M.I. (ECF No. 12) and Defendant North Hunterdon-Voorhees Regional High School Board of Education ("Defendant") (ECF No. 13). Each party opposed the other's motion (ECF Nos. 14, 15), and Defendant replied to Plaintiff's opposition (ECF No. 16). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's Motion is granted in part and denied in part. In addition, Defendant's Motion is denied.

**I. BACKGROUND**

The parties are familiar with the factual and procedural history of this matter and therefore the Court recites only those facts necessary to resolve the instant Motions. *See M.C.I. ex rel. M.I. v. N. Hunterdon-Voorhees Reg'l High Sch. Bd. of Educ.*, No. 17-1887 (AET-LHG), 2018 WL 902265 (D.N.J. Feb. 15, 2018). Plaintiff is M.I.'s mother. It is undisputed that at all times relevant,

M.I. resided within the geographic region of Defendant's regional high school district and remained eligible for special education and related services.[1] (Def.'s Statement of Material Facts ("DSMF") ¶¶ 1–2, ECF No. 13-1; Pl.'s Resp. to DSMF ("PRDSMF") ¶¶ 1–2, ECF No. 14.)

### A. Prior District Court Proceeding

In February 2018, the Court affirmed an Administrative Law Judge's ("ALJ") finding that Plaintiff failed to timely notify Defendant of M.I.'s unilateral placement at the Pennington School ("Pennington"), a private out-of-district placement. *M.C.I.*, 2018 WL 902265, at *3, *5, *8. The Court, however, "reject[ed] the ALJ's legal conclusion, reached without equitable analysis, that Plaintiff's behavior was so unreasonable as to bar any reimbursement." *Id.* at *7. Consequently, the Court remanded the matter to the ALJ to determine whether Plaintiff "is entitled to any reimbursement of tuition despite the failure to provide timely notice, and therein potentially reach the [unaddressed] questions of whether [Defendant's] proposed [Individual Education Program ('IEP')] would provide M.I. with [a Free and Appropriate Public Education ('FAPE')] and whether Pennington was an appropriate placement." *Id.* at *8.

### B. Administrative Proceeding

On remand, the matter was reassigned to another ALJ who, after a five-day evidentiary hearing, concluded that: (1) Defendant's proposed IEP did not offer M.I. a FAPE and that Pennington was a proper placement; and (2) Plaintiff's "conduct was so unreasonable as to serve as a bar to the relief she seeks"—tuition reimbursement.[2] (DSMF ¶¶ 11, 13; PRDSMF ¶¶ 11, 13; ALJ Op. 21, 23, 25, Ex. A to Compl., ECF No. 1.) For purposes of the instant Motions, Defendant

---

[1] In the third grade, M.I. was diagnosed with dyslexia and ADHD. (Pl.'s Statement of Material Facts ("PSMF") ¶ 1, ECF No. 12-12; Def.'s Resp. to PSMF ("DRPSMF") ¶ 1, ECF No. 15-2.)

[2] As discussed below, the ALJ also denied Plaintiff's motion to amend the petition to include the 2017-2018 academic year. (*See* ALJ Op. 3.)

2

does not challenge the ALJ's determinations that it did not offer a FAPE or that placement at Pennington was appropriate. (Def.'s Moving Br. 7, ECF No. 13-2.) Plaintiff, on the other hand, challenges the ALJ's denial of tuition reimbursement.

## 1. Factual Background

During M.I.'s eighth grade year, the parties began a transition plan for M.I. to attend high school at North Hunterdon High School ("North Hunterdon") beginning in fall 2016. (ALJ Op. 7; PSMF ¶ 6; DRPSMF ¶ 6.) At the time, M.I. attended the Craig School ("Craig") pursuant to a settlement agreement with the Clinton School District ("Clinton"). (ALJ Op. 6; PSMF ¶ 3; DRPSMF ¶ 3.) In November 2015, Plaintiff prepared an enrollment application for M.I. to attend Pennington. *M.C.I.*, 2018 WL 902265, at *3 n.4, *5. That same month, Plaintiff also met with Defendant's director of special services concerning M.I.'s potential placement at North Hunterdon. (ALJ Op. 6–7.) At that meeting, Plaintiff and the director agreed to have a North Hunterdon case manager observe M.I. during a class at Craig; the observation took place in December 2015. (*Id.*; *but see* PSMF ¶ 6 (seemingly maintaining that the observation did not take place prior to January 2016).)

On January 19, 2016, Plaintiff met with Clinton and North Hunterdon personnel to discuss and review a proposed transitional IEP, which Clinton proposed for M.I.'s transition to North Hunterdon.[3] (ALJ Op. 7; PSMF ¶ 6; DRPSMF ¶ 6.) According to the ALJ, during the meeting, Plaintiff voiced concerns about the proposed IEP but "was assured that North Hunterdon High

---

[3] The ALJ explained that under the applicable laws, Clinton was responsible for M.I.'s educational program until June 30, 2016, and that Defendant became responsible on July 1, 2016. (ALJ Op. 19.) Consequently, Clinton issued the IEP, which appears to have consisted of a spring 2016 program at Craig and a proposed fall 2016 program for M.I. at North Hunterdon. (*See id.* at 11–12 (indicating that the January 2016 IEP "address[ed] the period from January 19, 2016, through January 18, 2017"); *see also id.* at 7 (noting Plaintiff "was advised that since the IEP straddled two academic years, she should sign it so that M.I. could finish eighth grade at Craig").)

3

School would have a new IEP for her, and that there was no additional information that she could be given at that time." (ALJ Op. 7.) The ALJ also noted that Plaintiff was "advised" to sign the IEP "so that M.I. could finish eighth grade at Craig." (*Id.*) That same day, Plaintiff signed the IEP, enrolled M.I. at North Hunterdon, and agreed to visit the high school in March 2016. (*Id.*; PSMF ¶¶ 6–7; DRPSMF ¶¶ 6–7.)

On March 16, 2016, Plaintiff and M.I. visited North Hunterdon. (ALJ Op. 8; PSMF ¶ 8; DRPSMF ¶ 8.) M.I. was evaluated for Read 180 during the visit.[4] (ALJ Op. 8.) Plaintiff, to a disputed extent, met with members of Defendant's child study team and received information regarding M.I.'s proposed program. (ALJ. Op. 8–9; PSMF ¶ 8; DRPSMF ¶ 8.) Shortly before the visit to North Hunterdon, on March 10, 2016, M.I. was accepted at Pennington. (ALJ Op. 9.) And in May 2016, Plaintiff submitted a signed enrollment contract to Pennington to hold M.I.'s placement. (ALJ Op. 9; PSMF ¶ 9; DRPSMF ¶ 9.) The ALJ observed that, during this time, Defendant sent Plaintiff correspondence (1) inviting Plaintiff to "open an online account to access high-school-related information" and (2) containing a schedule of M.I.'s classes. (ALJ Op. 9.)

On July 7, 2016, Plaintiff received a revised draft IEP from Defendant dated July 5, 2016. (ALJ Op. 9–10; PSMF ¶ 10; DRPSMF ¶ 10.) According to Plaintiff, the proposed program did not offer M.I. a FAPE. (ALJ Op. 10; PSMF ¶ 10.) On July 11, 2016, Plaintiff wrote to Clinton to express her concerns and requested an out-of-district placement for M.I. (ALJ Op. 10.) Sometime thereafter, Plaintiff forwarded Defendant a letter dated July 14, 2016 from Craig recommending

---

[4] The ALJ explained that Plaintiff "did not receive the Read 180 results until August. It was explained that they were forwarded to Clinton, its personnel were supposed to send them, and they neglected to do so. The scores reflected that M.I. was reading at grade level and that Read 180 was not an appropriate intervention for her." (ALJ Op. 9 n.5.)

4

Pennington as an appropriate placement for M.I. *M.C.I.*, 2018 WL 902265, at *3; (*see* ALJ Op. 10.) On July 19, 2016, Plaintiff filed a due process petition which states that Plaintiff:

> seeks tuition reimbursement for the placement of [M.I.] in an out of district private school as a result of [Defendant's] failure to provide the child with an acceptable IEP and proof that [Defendant] ha[d] the ability to provide a [FAPE]. In the alternative, [Plaintiff is] open to discussing the possibility of [Defendant's] proposed IEP, if any, to determine whether [Defendant] is capable of providing a [FAPE] to the child.

(Due Process Pet., Ex. A to Pl.'s Moving Br., ECF No. 12-2.) That same day, Plaintiff also sent Defendant e-mail correspondence advising that she would be exercising procedural safeguards to dispute the IEP. *M.C.I.*, 2018 WL 902265, at *3; (ALJ Op. 11.) On July 20, 2016, Defendant responded and offered to meet with Plaintiff. (ALJ Op. 11.) On July 30, 2016, Plaintiff made a $9,500 payment to Pennington to reserve M.I.'s placement. (*Id.* at 10; PSMF ¶ 13; DRPSMF ¶ 13.) The parties ultimately met on or around August 15, 2016 with counsel present. (PSMF ¶ 15; DRPSMF ¶ 15; *see* ALJ Op. 11.) At that meeting, Defendant allegedly presented the same July 2016 proposed IEP, which Plaintiff again rejected. (PSMF ¶ 15.)

M.I. did not attend the first day of high school at North Hunterdon on August 24, 2016. (ALJ Op. 11.) On September 1, 2016, Plaintiff sent Defendant e-mail correspondence advising that M.I. had been unilaterally placed at Pennington. (*Id.*)

### 2. ALJ's Findings

The ALJ found that Plaintiff "presented as a concerned and loving parent, who genuinely wants to see her daughter succeed. But she was a less-than-credible witness." (*Id.* at 8.) In that regard, the ALJ noted that Plaintiff offered vague answers to certain questions. (*See e.g., id.* at 8 ("On cross-examination, pointed questions about whether critical information was shared with school personnel were often met with 'I do not remember.'"); *id.* ("When asked if she signed an

[e]nrollment [c]ontract at the Pennington School in May 2016, [Plaintiff] stated, 'I don't remember what it was that I signed. I signed something.' [Plaintiff] later confirmed that she holds a law degree, making any confusion that the document she signed was a contract less than believable."); *id.* at 10 ("But when asked at the hearing if she had alerted anyone in Clinton about the status of the Pennington School placement, [Plaintiff] replied, 'I don't remember.'"); *id.* ("When asked if she had a conversation with Craig . . . advising her that M.I. had been accepted at Pennington, [Plaintiff] replied, 'I might have.' [Plaintiff] later changed her testimony and said she told no one about the Pennington acceptance because she wanted to keep her options open.").)

In reaching its decision, the ALJ found that Plaintiff's "statement that the family was actively considering placement at the public high school was disingenuous." (*Id.* at 10–11; *see id.* at 11 (finding that "[i]t strains credibility that parents would spend close to $10,000 to hold a spot at a school in which they did not earnestly intend to enroll their daughter." (*Id.* at 11.) According to the ALJ:

> These parents reached out to [Defendant] only to set up a reimbursement claim. [The parents] actively, and secretly, pursued private-high-school placement. They did not attend IEP meetings earnestly seeking to collaborate on the development of an appropriate educational plan for M.I. A wholly inadequate IEP was readily signed by [Plaintiff] when it achieved her goal of continuing M.I. at the Craig School, notwithstanding the fact that the very same IEP placed her daughter in a mainstream high-school setting with few supports. [Plaintiff] urged that she earnestly visited the high-school program, but she did so [while] simultaneously applying to private schools and without letting on that she was doing so. Not once did she say that the program offered by [Defendant] was so inadequate that she might need to privately place M.I. if the district did not adjust or amend the IEP in the ways she saw appropriate.

(*Id.* at 24.) The ALJ also found that Plaintiff notified Defendant for the first time on September 1, 2016, when Plaintiff sent Defendant e-mail correspondence advising that M.I. had been unilaterally placed at Pennington. (*Id.* at 11.) The ALJ, therefore, concluded that Plaintiff's

6

"conduct was so unreasonable as to serve as a bar to the relief she seeks. Her notice was not just a bit late, it was egregiously late, and was colored by an utter lack of candor." (*Id.* at 25.) This appeal followed.

## II. LEGAL STANDARD

"The standard of review under which this Court considers an appeal of a[n ALJ] decision under the IDEA differs from that governing the typical review of summary judgment." *M.A. ex rel. G.A. v. Voorhees Twp. Bd. of Educ.*, 202 F. Supp. 2d 345, 359 (D.N.J. 2002), *aff'd*, 65 F. App'x 404 (3d Cir. 2003). "When deciding an IDEA case, the District Court applies a modified version of *de novo* review and is required to give due weight to the factual findings of the ALJ." *L.E. ex rel. M.S. v. Ramsey Bd. of Educ.*, 435 F.3d 384, 389 (3d Cir. 2006) (citations omitted). "Factual findings from the administrative proceedings are to be considered prima facie correct, and if the reviewing court does not adhere to those findings, it is obliged to explain why." *D.S. ex rel. D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010) (internal quotation marks and citation omitted). An ALJ's legal determinations, on the other hand, are reviewed *de novo*. *Moorestown Twp. Bd. of Educ. v. S.D. ex rel. M.D.*, 811 F. Supp. 2d 1057, 1064 (D.N.J. 2011). "Applying these standards, the district court may make findings 'based on the preponderance of the evidence and grant the relief it deems appropriate, including an award of attorney's fees, a requirement for reimbursement for a private educational placement, and a direction for the provision of a compensatory education.'" *Id.* (quoting *Bayonne*, 602 F.3d at 564).

## III. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred in denying her: (1) request for tuition reimbursement for the 2016-2017 academic year; and (2) motion to amend the petition to include

7

the 2017-2018 academic year. (Pl.'s Moving Br. 11–18, ECF No. 12-13.) Plaintiff also argues that she is entitled to attorneys' fees. (*Id.* at 8–11.) The Court addresses each argument in turn.

### A. Tuition Reimbursement

The IDEA "requires States receiving federal funding to make a [FAPE] available to all children with disabilities residing in the State[.]" *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 232 (2009). "If parents believe that the school district is not providing a FAPE for their child, they may unliterally remove him [or her] from the school, enroll him [or her] in a different school, and seek tuition reimbursement for the cost of the alternative placement." *Munir ex rel. O.M. v. Pottsville Area Sch. Dist.*, 723 F.3d 423, 426 (3d Cir. 2013) (citation omitted). The IDEA "authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE and the private-school placement is appropriate[.]" *Forest Grove*, 557 U.S. at 247. Nevertheless, "parents who unilaterally change their child's placement during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 373–74 (1985).

"Under [the] IDEA and the corresponding New Jersey regulation, the cost of reimbursement may be reduced or denied if, '10 business days . . . prior to the removal of the child from the public school, the parents did not give written notice to the' district of their concerns and their 'intent to enroll their child in a private school at public expense.'" *H.L. ex rel. V.L. v. Marlboro Twp. Bd. of Educ.*, No. 16-9324, 2017 WL 5463347, at *7 (D.N.J. Nov. 14, 2017) (second alteration in original) (citing 20 U.S.C. § 1412(a)(10)(C)(iii)(I); N.J. Stat. Ann. § 6A:14-2.10(c)(2)). Reimbursement may also be reduced or denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C. § 1412(a)(10)(C)(iii)(III); N.J. Stat. Ann. § 6A:14-2.10(c)(4). The reviewing judge "retain[s]

discretion to reduce the amount of a reimbursement award if the equities so warrant[.]" *Forest Grove*, 557 U.S. at 247.

Here, Plaintiff does not dispute that she failed to timely notify Defendant of her intent to unilaterally place M.I. at Pennington. (Pl.'s Moving Br. 13 ("Timely notice is not an issue in this action.").) Rather, Plaintiff challenges the ALJ's conclusion that she acted so unreasonably so as to warrant a complete denial of tuition reimbursement. Based on the record before it, the Court finds that Plaintiff is entitled to partial tuition reimbursement.

As a preliminary matter, the Court disagrees with the ALJ's finding that Plaintiff only provided Defendant with notice for the first time on September 1, 2016. (*See* ALJ Op. 11.) The IDEA requires that parents provide the district with written notice of their concerns and their intent to enroll their child in a private school at public expense. *H.L.*, 2017 WL 5463347, at *7 (citing 20 U.S.C. § 1412(a)(10)(C)(iii)(I)). As the Court previously found, "[a]t the earliest, Plaintiff rejected the IEP and gave notice of intent to seek tuition reimbursement in the [d]ue [p]rocess [p]etition on July 19, 2016."[5] *M.C.I.*, 2018 WL 902265, at *5; *see* Due Process Pet. (providing that Plaintiff sought "tuition reimbursement for the placement of [M.I.] in an out of district private school as a result of [Defendant's] failure to provide [M.I] with an acceptable IEP"). In finding otherwise, the ALJ did not explain why the petition did not serve as adequate notice. Because the petition expressed that Plaintiff rejected Defendant's proposed IEP and that she intended to seek tuition reimbursement for an out-of-district placement, the Court again finds Plaintiff provided Defendant with adequate—although untimely—notice on July 19, 2016.

---

[5] "M.I. was considered removed when Plaintiff signed the Pennington enrollment contract in May 2016." *M.C.I.*, 2018 WL 902265, at *5.

9

Next, the Court addresses the ALJ's conclusion concerning unreasonableness. In denying tuition reimbursement, the ALJ found that Plaintiff's notice was "egregiously late" and that Plaintiff was not genuinely seeking to enroll M.I. at North Hunterdon. (ALJ Op. 24–25.) Moreover, according to the ALJ, Plaintiff "did not collaborate with [Defendant]." (*Id.* at 16.) The record, however, suggests otherwise. For example, in reaching its decision, the ALJ found that "[a] wholly inadequate IEP was readily signed by [Plaintiff in January 2016,] when it achieved her goal of continuing M.I. at the Craig School, notwithstanding the fact that the very same IEP placed her daughter in a mainstream high-school setting with few supports." (*Id.* at 24.) But by the ALJ's own account, despite voicing her concerns about the proposed IEP during the January 2016 meeting, Plaintiff was "advised" to sign the IEP "so that M.I. could finish eighth grade at Craig" and "was assured that North Hunterdon High School would have a new IEP for her[.]" (*Id.* at 7.) And as the ALJ found, the "new" IEP did not offer M.I. a FAPE. (*Id.* at 21–22.) The ALJ also found that "[n]ot once did [Plaintiff] say that the program offered by [Defendant] was so inadequate that she might need to privately place M.I. if the district did not adjust or amend the IEP in the ways she saw appropriate." (ALJ Op. 24.) But as the ALJ observed, after receiving the July 2016 IEP, Plaintiff filed the due process petition, contacted North Hunterdon to express her concern, and thereafter met with North Hunterdon in August 2016 when they mediated the IEP impasse. (*Id.* at 11.) That Plaintiff disagreed with Defendant's proposed IEP does not support a finding that Plaintiff acted unreasonably . *See Upper Freehold Reg'l Bd. of Educ. v. T.W.*, 496 F. App'x 238, 243 (3d Cir. 2012) ("To say that *Cape Henlopen* would apply to totally bar parents from reimbursement after negotiations reached an impasse is to fault them for failing to agree to whatever the school district presents, whether or not justified.")

10

The ALJ's finding regarding lack of collaboration is also not supported by the record. A Third Circuit case cited by Defendant supports this position. In their Moving Brief, Defendant cites to *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59 (3d Cir. 2010), to support its argument that Plaintiff is not entitled to tuition reimbursement. (Def.'s Moving Br. 10–11.) There, the court denied tuition reimbursement because the parents did not provide timely notice and it was undisputed that "the [p]arents' conduct in delaying the continuation of the IEP meeting and cancelling the speech and language evaluation substantially precluded any possibility that the [d]istrict could timely develop an appropriate IEP for C.H. and provide the necessary services to him[.]" *C.H.*, 606 F.3d at 71. The court explained:

> The [p]arents here have disregarded their obligation to cooperate and assist in the formulation of an IEP, and failed to timely notify the [d]istrict of their intent to seek private school tuition reimbursement. We believe these are among the unreasonable[] . . . actions taken by the parents that Congress contemplated when it gave courts the authority to equitably reduce or eliminate tuition reimbursement.

*Id.* (third and fourth alterations in original) (internal quotation marks and citation omitted); *see also W.D. ex rel. W.C.D. v. Watchung Hills Reg'l High Sch. Bd. of Educ.*, 602 F. App'x 563, 567–68 (3d Cir. 2015) ("We, and other courts, have previously denied reimbursement when, as in this instance, the parent fails to satisfy the obligation to cooperate and assist in the formulation of an IEP, and . . . to timely notify the [d]istrict of [the] intent to seek private school tuition reimbursement." (first and third alterations in original) (internal quotation marks and citation omitted)).

After review, the Court maintains that "this is not a case in which either party's conduct evidences bad faith. The parents here were not obstructionist or uncooperative." *M.C.I.*, 2018 WL 902265, at *7. Indeed, the ALJ noted Plaintiff met with North Hunterdon personnel in January

2016 and later visited the high school where she, although the extent of this meeting is disputed, met with high-school personnel to discuss M.I.'s proposed program. (ALJ Op. 7–8; PSMF ¶ 8; DRPSMF ¶ 8.); *see also M.C.I.*, 2018 WL 902265, at *7 (noting that "in January, March, April, May, and July 2016, the parents attended IEP meetings"). And M.I. was evaluated for Read 180 during the March 2016 high school visit. (ALJ Op. 8.) Notably, neither the ALJ nor Defendant suggest that Plaintiff was unresponsive, failed to attend a scheduled meeting, or failed to make M.I. available for any evaluation. On these facts, the Court finds that Plaintiff's conduct was not so unreasonable so as to warrant a complete denial of tuition reimbursement. The Court, accordingly, grants Plaintiff's Motion to the extent it challenges the ALJ's ruling regarding tuition reimbursement.

In reaching its decision, the Court does not suggest that Plaintiff is without fault. The Court is mindful that the ALJ found that Plaintiff presented as a less-than-credible witness and agrees that Plaintiff should have disclosed M.I.'s enrollment at Pennington sooner. But the Court cannot find that Plaintiff acted so unreasonably to warrant a wholesale denial of tuition reimbursement. Moreover, the Court finds that Plaintiff's untimely notice alone does not warrant denial of tuition reimbursement. "Indeed, several courts have exercised their equitable discretion to permit parents to recover the full or partial cost of reimbursement, despite the parents' failure to provide timely notice as required under [the] IDEA and the corresponding New Jersey regulation." *H.L.*, 2017 WL 5463347, at *8 (collecting cases). Thus, for the above-stated reasons, the Court finds that Plaintiff is entitled to partial tuition reimbursement.[6]

---

[6] The Court reserves judgment on the award amount. In the Complaint, Plaintiff indicates that she seeks the "full amount of costs expended with respect to M.I.'s placement at Pennington[,]" including the "full amount of tuition they paid, all transportation costs, and any and all other related costs." (Compl. 12, ECF No. 1.) Plaintiff, however, does not specify the amount of the tuition or any of the related costs. The Court will set a deadline for Plaintiff to file a supplemental submission

12

## B. Amendment of Pleadings

Plaintiff argues that the ALJ erred in denying her motion to amend the petition to include the 2017-2018 academic year. (Pl.'s Moving Br. 16–18.) In that regard, Plaintiff asserts that:

> [b]y way of letter dated October 3, 2018, [the ALJ] notified the parties that she was in possession of Plaintiff's January 10, 2017 and January 18, 2017 requests to amend the [d]ue [p]rocess [p]etition to include the December 21, 2016 IEP. [The ALJ] noted that the [Office of Administrative Law's] file did not contain an order granting Plaintiff's motion to amend, and therefore was limiting the scope of the hearing to the proposed 2016-2017 IEP only.

(PSMF ¶ 22; DRPSMF ¶ 22.)

In denying Plaintiff's motion, the ALJ found that Plaintiff failed to demonstrate the prior ALJ granted the January 2017 requests. (ALJ Op. 3.) The ALJ also noted that Plaintiff could have, but did not, include the December 2016 claim in her second due process petition filed in October 2018. (*See id.* at 3 n.2; *see id.* (noting there is a two-year statute of limitations for due process matters).) The ALJ found that, instead, Plaintiff made an untimely motion on the first day of the hearing on January 25, 2019. (*Id.* (citing N.J. Stat. Ann. § 6A:14-2.7(i)(2) ("If a petition is amended by order of an [ALJ], the order shall be issued no later than five days prior to the date the matter is heard").) Finally, during a hearing addressing the motion, the ALJ noted that Defendant would be prejudiced because it "didn't have an opportunity to answer and review an amended petition." (Jan. 25, 2019 Hr'g Tr. 48:8-16, ECF No. 13-8.)

The Court declines to reverse the ALJ's decision denying Plaintiff's motion to amend. Plaintiff does not dispute that her January 2019 request was untimely. Instead, Plaintiff argues that in remanding this matter, the Court "did not limit Plaintiff from seeking reimbursement for only

---

in support of her request for reimbursement, including certification(s), itemized list(s) of costs, and supporting exhibit(s).

13

the 2016-2017 school year." (Pl.'s Moving Br. 16.) But the Court's decision did not address claims for any year other than those related to the 2016-2017 school year. And Plaintiff's unsupported suggestion that the record is replete with facts relating to the 2017-2018 school year is unavailing. (*Id.* at 18.) Plaintiff provides no citations to the record to support that position. (*See id.*) Plaintiff therefore fails to demonstrate that the ALJ abused its discretion in denying her motion to amend. The Court, accordingly, denies Plaintiff's Motion to the extent it challenges the ALJ's ruling on this issue.

### C. Attorneys' Fees

"The IDEA attorneys' fee provision, like various other statutory fee-shifting provisions, allows courts to award attorneys' fees to a 'prevailing party.'" *M.R. v. Ridley Sch. Dist.*, 868 F.3d 218, 224 (3d Cir. 2017). "[T]o 'prevail' under the IDEA, . . . a party must obtain a 'material alteration of the legal relationship of the parties' that is 'judicially sanctioned.'" *Id.* (citation omitted). "Importantly, a party achieves a 'material alteration' of the parties' legal relationship and 'prevail[s]' for attorneys' fees purposes only if he obtains relief that is 'in some way merit[s]-based.'" *Id.* (alterations in original) (citation omitted).

Here, the ALJ ruled in Plaintiff's favor in concluding that Defendant's proposed IEP did not offer M.I. a FAPE and that Pennington was a proper placement. (ALJ Op. 21, 23.) Having found that Plaintiff is also entitled to partial tuition reimbursement, the Court finds that Plaintiff is a prevailing party under the IDEA. The Court, accordingly, grants Plaintiff's Motion to the extent it seeks attorneys' fees under the IDEA. Plaintiff may submit a request for attorneys' fees that complies with Local Civil Rule 54.2 for the Court's consideration.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is granted in part and denied in part. In addition, Defendant's Motion is denied. The Court will enter an Order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**